Good morning, Your Honor. May it please the Court. Scott Talkov on behalf of Reed and Hellyer, Administrative Predator, and Walter Wilhelm Bauer, also Administrative Predator. The appearance I just made in this case is what the trustee contends is the primary issue on appeal. Specifically, the trustee points to the no question that an attorney from Reed and Hellyer and an attorney from Walter Wilhelm Bauer were both at the hearing and that they objected. Specifically, the trustee contends that those attorneys did not state their dual capacity on behalf of the Committee of Unsecured Creditors and the debtor respectively. And why is it unreasonable to expect an attorney and that who's appearing in this dual capacity to state his or her appearance in that way? It's not unreasonable, but I don't believe it's the standard. I believe the Marciano court correctly explained what Ray means. The Marciano court said that it's whether the court understands who is objecting. Well, why wouldn't a better rule be that will just require you as the attorney like you just did to state rather clearly so that we don't have this ambiguity that requires an appeal to figure out years down the road? If there was ambiguity, I think that would be an excellent rule. But in this case, even if that were the rule, there would be no ambiguity in this case. In this case, the record is littered with. I think there's massive ambiguity actually in this on this record. That's the problem, right? It could have been cleared up very easily by what you just did in five seconds at the outset. That would make it even clearer, but I think there were a number of comments by the trustee's counsel and by the court. Trustee's counsel said that's the conflict of interest. We know why you don't like this deal because you're not getting any money out of it. We're taking the money. What about the, it's a little odd that you're here on behalf of both firms, it seems to me, because they are differently situated. Your client, Reed and Hellyer, is in a particularly bad posture to make this argument given that they really, that lawyer could not appear in that dual capacity, correct? Given the conflict of interest that would adhere? I don't think there would have been a conflict of interest as to the $350,000. To the extent you would make the argument that we disagree that the settlement should be reached, but to the extent it's reached, Reed and Hellyer also decks to the $350,000 only being divvied up among one creditor. I don't see that as the particular. Why did the firm move to withdraw then and citing the potential conflict? In an abundance of caution, the court denied it. The court said there was no conflict. Say again why there's no potential conflict? Well, you'd make the alternative arguments first on behalf of the debtor and so long as Reed and Hellyer also agrees, we don't want this settlement being reached. We'd rather have the property marketed. We think both of us are going to make more money, but just in case this court's ready to approve this deal, the $350,000 the trustee contends is being gifted to him while also giving consideration by way of selling the property and the settlement. Wouldn't every dollar that went to your client as an administrative creditor be that one less dollar that went to the Committee of Unsecured Creditors? Which your firm was representing, right? No, because the $350,000 was being divvied up only among those priority creditors, the administrative creditors. You could also make the argument that too much was going to whoever it went to, to administrative creditors. Your complaint then is that money that was going to the trustee should have gone from, should not have gone to the trustee, but should have gone to your clients? That it should go to the trustee has a fiduciary duty on behalf of the estate. If it was paid to the estate, then your clients would be down the list, wouldn't they, on the list of creditors? No, almost at the top. 507 delineates the priorities that administrative creditors are equally situated. Those creditors are the trustee's counsel, debtor's counsel, committee counsel. Counsel, if we were to try to undo this, doesn't the money that was set aside actually go to the purchaser? No. They were a secured creditor who gave money out of the 8.5 or 9.5 million that they bid on the property, and they decided to devote monies out of that, out of their appropriations for these administrative, for these administrative fees for the trustees and others. Yes, the record reflects that the purchaser did not care where the money went. They said it. Right, but in truth, the money would go to them first. They are still an unsecured creditor. I mean, they're a secured creditor who hasn't been fully paid. No, I would disagree because the money would go to the estate. The trustee, they were paying consideration for the purchase of the property and a release of litigation from the debtor or the estate, the trustee representing that estate. So they paid some consideration. Trustees don't collect money for themselves. They don't take gifts from interested parties. What is it you want us to do at this point and that you think that we have the should reverse the opinion finding that particularly Walter Wilhelm Bauer, as Your Honor pointed out, had standing to object to this order, allow the district court to decide whether or not it was appropriate and whether or not David Reynolds governed the case, and in particular... What was appropriate? The settlement is appropriate? That the trustee was allowed to accept money only on behalf of himself, a carve-out only for the trustees' administrative fees. Wasn't this follows up from Judge Bybee's question, I think. Wasn't the carve-out an integral part of the settlement? Yes, and there's a severability clause. So even if the provision that the carve-out only goes to the trustees, professionals, is deemed unenforceable, that settlement agreement has a severability clause saying that the rest of the provision, the rest of the trustee made a generally... But I don't see how you can reallocate that money without reallocating what the interests are among the people who settled. That's the difficulty I'm having, which relates to the equitable, equitable mootness argument more than the first argument, right? Yes, Your Honor. There's two bases relied on below for the referring to, is that no one is questioning... Reid and Heller and Walter Wilhelm Bauer are not questioning the trustee's deal, that the trustee collected $350,000 for the estate and gave away this consideration by way of the properties being sold and the settlement being reached. What they're saying is, what did the trustee collect? Did he collect a gift for himself? You're only discussing who gets the $350,000, right? Correct. Is your argument, right? So therefore, a stay is not required because the stay just would go to the sale rather than to the allocation of the $350,000. But I'm having trouble following that because it seems to me how you allocate what that, where that $350,000 goes to would, if it's going to be a settlement, requires them to settle. And one of the interests in the settlement was the idea that this settlement is pretty artificial, isn't it? Maybe I'm just not understanding what you're wanting. Yeah, the trustee drafted the settlement agreement and it has a severability clause. I understand the severability clause, but I'm not sure the severability clause does away with the idea of the fact that it is a settlement. You want a resettlement now, right? You want a resettlement, but you want a resettlement now. So this small part of the settlement seems odd to me. I mean, make it less odd for me. There's one particular provision, only one paragraph, and it says that this money being accepted by the trustee is only to be used for the trustee and his professionals. That provision... Right, you want to take that and give it and have it go to someone else, right? We believe that trustees cannot accept any gifts from any interested parties. This doesn't make any sense. It's a breach of fiduciary duty. There's a case directly on point outside of the Ninth Circuit. So where's that money gonna go? The estate. That's the only way that trustees accept money. They are the trustees of the estate. They don't get to take off their trustee hat and just accept gifts for them and their friends. They have to represent the estate. It's not really part of the estate though, is it? It's categorically different from being part of it. It's like a... I don't know what the word is, surcharge or something. It's coming from the purchase price, right? Yes, Your Honor. I'm not an expert in bankruptcy, so I'm asking you and I'm not sure I understand this. I'm referring to this as a disguise surcharge and the Bankruptcy Court has made similar comments. There's actually a transcript found in the related District Court Appeal at Dock 19-1 and in the Bankruptcy Court at Dock 5-0-4, and the court specifically asked that the Ninth Circuit says he'll never be on the District Court, but if the Ninth Circuit needs to hear this, maybe Debbie Reynolds went too far. And Debbie Reynolds is the case that the court felt bound to follow to allow this sale, this so-called surcharge, to go through even though it doesn't look like a surcharge. The court referred to this as mischief between the trustee and interested parties. He said that this mischief can continue, that the Ninth Circuit and Debbie Reynolds was likely incorrect, that this would be an aberration, this would be a rare occurrence. I guess I'm just not... we can go and look at those precedents. It seemed like a package deal that you want to undo and you're saying, well, we don't want to undo it. You can't say you want to undo it because then you run into an equitable mootness problem, so you're gonna say we don't want to undo it, we just want to change part of the deal. And I'm just having trouble seeing how changing part of the deal can logically be done. I mean, by fiat you can do anything, I guess, but it's not logical to undo something where the major thing that you're doing can't be undone. There's only one provision in the agreement that we ask to be declared unlawful, and the rest of the agreement is lawful. Yeah, but would the other people have agreed to it if that part wasn't part of the deal? You know, usually you deal for five... we'll give you five things and you give us five things and you'll say, well, that deal is fine except for one of those five things. The other people may say, wait, I wouldn't have given you all those five things if I wasn't getting that one thing or if it wasn't going to so-and-so. It's a deal is a deal, right? That's my question. It seems to me you can't just take part of a deal and say, well, that's not part of the deal. And you can't say, and the answer to that normally would be, well, if you don't accept it as part of the deal, then you can't say... So here's the problem with that, Your Honor. If the trustee, which he's never said, said, I would not enter into that deal if they weren't giving the money just to me, then he's not a trustee. He's taking gifts outside of the estate and he's violating his fiduciary duties. He's never said it on the record. I doubt his counsel will say that today. He can't say it. He needs to say, I would have taken the deal either way. So... He has to say that. He has to say that. He's a trustee. How could he say, oh, I would never take this deal if I wasn't getting all the money? It's a terrible thing to say. I do have three minutes. I'd like to reserve that. Okay. Thank you, Your Honor. May it please the court, Doug Flau from Errant Fox LLP, on behalf of the Chapter 11 trustee of the Wrightwood Guest Ranch Bankruptcy Estate. The appellants here lack standing and this court can dismiss this appeal on two interrelated but separate grounds with respect to standing. We'll get into that. The appellants, this appeal is also equitably moot on two separate grounds, which either one could support the dismissal of these consolidated appeals. Before we get into that though, the court did and counsel for the appellants discussed sort of the background and the, I guess if you will, the how this settlement got made. And I think it's important to state that this isn't a gift. This isn't a disguised surcharge. This is a surcharge authorized by the Bankruptcy Code under Section 506C. And the Bankruptcy Code says that a trustee or his professionals may surcharge secured creditors collateral to the extent that they expend services that benefits the secured creditor. And this is perfectly acceptable and happens all the time. And it's in cases where a property may be underwater, it really is the saving grace. And the only reason the trustee and his professionals would do any work and do any upkeep of the property. Because if the property gets foreclosed on or sells for less than the amount of secured debt, well, nobody gets anything. And so Section 506C specifically says you can surcharge a secured creditor's collateral. And often when the secured creditor believes that there may be a surcharge there, the secured creditor is nervous about that. And all this settlement did was cap the amount of that surcharge. It provided certainty to the secured creditor that the bankruptcy, the code authorized surcharge under 506 would not exceed $350,000. So this isn't... What about severability provision that he refers to? Well, let's get to that severability provision because I am inclined to agree with your Honor or some of the comments your Honor made, which is the severability provision is there. And if this court somehow found that that provision was unlawful, let's play out what would happen. Perhaps this court would just... By that provision, you don't mean the severability provision? No, no, the surcharge provision. I believe it's paragraph 11 of the settlement agreement that provides... What he says now, which I think is consistent with his argument, is that the $350,000 is directed towards certain people and that part of the agreement should have been changed and a stay of the sale wouldn't have affected that. Well, what he wants to do is just have you go in and rewrite paragraph 11 to say $350,000 goes to somebody else. But that's not what you do when a provision is unlawful. This provision isn't unlawful, but assuming you folks, the judge... The question is whether if you did that, you would affect the interests of the people who participated in the settlement. Absolutely. I mean, the sale. How would it? Because if the provision was entitled to this... Why would the participants in the sale care about that? That's my question. Well, and Your Honor raises an interesting point because in my view, actually, if that provision was just stricken, then it may not affect too many folks because the court has already separately approved the surcharge in the amount of $350,000. The bankruptcy court has done that and has found that the $350,000 is necessary for the... Well, he obviously wants more relief than that. He obviously wants some relief which will cause it to be allocated as if it was part of the estate. That's what he says. And if you do that, that absolutely affects... How does that affect? Well, how? That's my question. How does it affect? Well, what happens is we have a surcharge order surcharging the secured creditor from $350,000. So if you're taking some of that money and giving it to somebody else, the secured creditor all of a sudden is losing more than $350,000. Not if you redirect it. He's still just $350,000, right? We have a court order from the bankruptcy court that says we can surcharge $350,000 from this secured creditor. So that's not in front of Your Honors and that's not going anywhere. So if you take $350,000 and give it to somebody else, you're just digging into the hide of the party that's not in the room here, the secured creditor. I'm assuming you're correct. I'm just trying to understand how that works. How do they have to pay more than $350,000 now all of a sudden? Well, Your Honors, what I'm saying is that the $350,000 surcharge was not approved as part of the settlement agreement. This was just a cap to that surcharge. This just said that assuming the bankruptcy court would order a surcharge later, it would not be over $350,000 and that the $350,000 would be held in reserve to subsequently. That seems to cut against you then. It's not really part of the settlement then. So if it's not part of the settlement, why do you need to stay of the actions pursuant to the settlement if this is all something that's apart from the settlement? Getting to equitable movements, let's talk about it. That's what I'm talking about. Yeah. So there's two reasons of equitable movements. One is that under the mortgage limited case, which I think... You haven't answered my question about how it affects it. Well, Your Honor, what would happen is you have conflicting orders. First of all, the sale order approves the settlement agreement. It says so right in the sale order and no stay was sought and the sale order wasn't appealed. So if Your Honors go back and say settlement agreement not approved, you have conflicting orders, which is a problem right there because the buyer has to rely on it. Chain of title has to rely on these sorts of things. So you're going to have conflicting bankruptcy orders. I think if you go back... But my concern is the stay. The stay, if you're talking about equitable movements, right? You could make a real strong argument that if the people who participated in the sale got something different or no longer have the thing that they thought they bought or something like that because this $350,000 is being reallocated, that there's equitable movements here. You have kind of a loctite argument. But if you can't say that, it's no longer a loctite argument. Instead, you have an argument that the sale went through, the people who bought it have the same interest that they bought, they're getting the same thing for it, and all we're doing is reallocating this capped $350,000, which you say now isn't even part of the settlement. And I think it can, Your Honor. I can't answer that question. So if you look at the answer to that question is the fact that Your Honor can't pick and choose this settlement. What's before the court today is to reject the settlement or approve it. If Your Honor rejects this settlement, then it does affect the releases that everybody gets. And I cited... Notwithstanding the severability agreement. Absolutely, because you can't... How, then? That's my question. How? Well... Okay. So I guess the settlement agreement doesn't say anything about surcharge, and then we'll rely on the other surcharge order of the bankruptcy court. It doesn't... But if Your Honor were to deny, essentially send back and overturn the order approving the settlement, then I think other parties are affected. That's just   all they want to do is overturn the severable part they claim that says this $350,000, capped or whatever, goes to these two people rather than going to through an allocation that the bankruptcy court would include their clients. Right? That's their argument. Right. And I'm saying... We understand their argument to say, oh, well, if you did that, you'd have to invalidate more. And I say, okay, I understand that. How is that so? And you say, well, they'd have to dissolve the whole thing. And I'm saying, how? And you say, well, they have to do the whole thing. I want to know how. Well, there's a line of cases, a large string of cases that talk about how you can't pick and choose parts of a settlement agreement. You either approve the settlement agreement or you don't. And if it's severable? I believe, Your Honor, unless the settlement... Unless it's a violation of law. The severability clause talks about if this is found to be in violation of law. There's no violation of law here. What they're saying is that this provision of the settlement agreement somehow didn't meet the standard under 919 for approval of settlements and you should overturn it. I don't think they're saying that this provision violates law. And if so, I would point them to Section 506, which provides of the Bankruptcy Code, which says it's perfectly lawful to have a surcharge under 506C. But that goes to the merits of it rather than whether it's moot or not, though. The issue is whether it's right or wrong about whether it's moot or not. Yes, Your Honor, but I think the merits at some level are looped into whether it's moot because Your Honor pointed out whether you can grant effective relief or not. On mootness, I think the very interesting issue is just whether or not under Mortgages I, the failure to seek a stay sits on one's rights sufficiently to, in itself, constitute grounds for dismissing this appeal on mootness. Since your time is ticking down, can you shift to the standing? Yes. You started out by saying you have two separate standing arguments. I thought you only had one. We do have two separate standing arguments, Your Honor. And the first, and thank you for bringing me back to standing because I think the standing in this case is probably the strongest argument for why these appeals need to be The words have meaning. And when we made our appearances today, you have to make your appearance on behalf of, you have to tell the court who you're representing. And if you don't, there can be consequences for this. So the first standing argument is to be in a person aggrieved under the Ninth Circuit, you have to appear and object. And NRA Commercial Finance says that. The case of Ray out of the Seventh Circuit is very on point with respect to The second standing argument is you also have to have a pecuniary interest. So if Your Honors decide that Reed and Hilliard did not appear and object, you can dismiss it on standing grounds. If Your Honors decide that Reed and Hilliard do not have a pecuniary interest in the settlement order, Your Honors can dismiss it on standing grounds as well. Both of those are independent. Why don't they have a pecuniary interest? It looks pretty pecuniary. Yeah, they've spent a lot of time and a lot of paper telling us that they ought to be getting some money. That sounds like a pecuniary interest. I would point the courts to the NRA Debbie Reynolds decision. And I think that's the decision that shows this court, and it's a Ninth Circuit decision, that shows why they don't have a pecuniary interest. Because a surcharge is a tax on the secured creditor's collateral. And it is not property of the estate. And so when Reed and Hilliard and Walter Wilhelm Bauer stand up... Asking that it be treated as if it was part of the estate. Right? You say that's wrong. I think they are, Your Honor. So if they get that, then they get money. That's pecuniary, right? Well, if Your Honor was going to rewrite the settlement agreement for them to tell them that they get a million bucks, yeah, they'd get money. Well, then they have standing. We can go on to the next issue. Well, okay. But just going back to the appear and object. So they definitely objected. You say that they didn't adequately appear. They did not object, Your Honor. They only objected on behalf of their respective clients. Okay. So... But they didn't appear. But they also didn't object on behalf of themselves as Reed and Hilliard. And I would point, Your Honors, to an order of the Bankruptcy Court. And this is a finding of fact of the Bankruptcy Court that I would submit is clear error standard of review. And the Bankruptcy Court specifically said in connection with the conflict of interest and motion to withdraw, it said that the Reed and Hilliard did not object to the settlement order. It said that. It found that. Well, yeah. You're talking about the Bankruptcy Court? Yeah. It said, yeah, I didn't understand you to be objecting on behalf of your firm. And they didn't file objection. They didn't. Everything they said at the July 19 hearing was prefaced twice, I think three times, by on behalf of the official committee of unsecured creditors. But they point to a couple of places where it started to sound like maybe they were asserting a different interest. Well, they were making arguments that sort of to the court that somehow an administrative creditor is being harmed by this. But it's one thing to make an appearance on behalf of somebody. And it's another thing to throw up a bunch of arguments and see what sticks. And then later, as sort of a surprise, try to tell the court, look, I'm going to appeal now. And that's why this standing issue is so important. Because in bankruptcy, unlike civil litigation where you have one side versus another side, there's hundreds if not thousands of parties that possibly might be affected by a bankruptcy court order. And a creditor might have an incentive to just kind of hold out, not say anything, wait until after the order is entered, then appeal, which would give that creditor an extreme amount of leverage because appeals are costly and long process. Is there some particular rule that you're asking us to adopt if we were to decide the case on this ground of standing? Your Honor, I think in Ray finance, I think the court already has an appear and objection standard. But to the extent that this court was going to extend that, I would urge the court that the case of Ray is particularly persuasive. Yeah, but that's what I'm saying. I agree. It seems factually on point. But what's the rule? The rule on Ray would be that you have to appear, and what we already have is appear and object. I guess appear would be make your appearance on the record. And object would be... So you have to formally state your appearance like he did today? That's the rule that you want us to have? You have to formally inform the court that you're appearing, for one. First, that's the easy part. And that you as the objecting party are objecting to the relief. And if you look at the cases that they cited, if you look at the two district court cases, the unpublished district court opinions, those are very interesting because they're actually trying to parse this out. And one of them actually, contrary to I think what they cited it for, said a creditor appeared and he filed papers just on behalf of himself. He appeared and filed papers. And the court still found lack of standing because they weren't sure that the creditor was really opposing the relief. So he was there. He filed papers, unlike the instant circumstances. That's what I say. Here, they definitely objected. They weren't in favor of this, right? You're just saying they were... We don't know. We know after they filed the notice of appeal. I thought they pretty clearly objected to approval of the settlement at the hearing, albeit on behalf of the client. On behalf of the client. And that's an important distinction. And I think that's the distinction that if your honors are going to make a distinction is to follow Ray and point out that you do need to... It's not enough for me to stand here and object. I have to object on behalf of somebody. And if they were objecting in a dual capacity, that needs to be noted for somebody, the bankruptcy court judge and the parties involved. Because you think the objections would be different depending on whether they're representing themselves or whether they were representing their clients. The bankruptcy court's response to those objections potentially would be different based on who is the one raising the objection. It's important who raises the objection in bankruptcy court. And that's why the bankruptcy standing requirement is higher than the Article 3 standing requirement. Because that was recognized by the act and continued along after the 78 code. Counsel, how hard would it be in this case? I'm going to the equitable and mootness question just briefly because you're over your time. How hard would it be to unscramble the eggs here? Does the trustee just have to return $350,000? Is that all we're talking about? It's just fungible money? It's not that property's been dissipated, there's a chain of title or other things? Is that all we're talking about? I don't think so, Your Honor. Property has been changed. Title has changed. Releases have been granted. People have relied upon those. That's if you look at the settlement as a whole. But if we just look at the $350,000, is that just money that went into the bank for the trustee? That the trustee could be ordered to disgorge? I don't think that this court at this stage could order. Well, the trustee doesn't have it. It's been distributed. The 506C surcharge motion was filed. It was approved. And the money's been dispersed. Dispersed to whom? To the trustee and the trustee's professionals. Okay. So are those multiple law firms? There is one law firm and one accounting firm and the trustee. The trustee himself under statutory fees. So you've got at least three parties that we'd have to go back and collect money from. And it was given to them how long ago? The order approving the 506C surcharge would have been entered almost a year ago, although I'm not confident. I can look at my records. You think sometime in 2017? Yes, Your Honor. So it went to the trustee. It went to a law firm. Is that Aaron Fox? That is, Your Honor. Okay. And then it went to an accounting firm? That is. That's correct, Your Honor. Okay. Thank you, Counsel. We've taken you well over your time. Thank you, Your Honors. Mr. Tocco? Thank you, Your Honor. As you heard, the trustee's counsel did not deny, did not claim he would not accept the settlement if the money did not go to him. He must, of course, take that position to act as a trustee. But what we heard just a moment ago is the question in this case, the underlying case, is whether this is a disguised surcharge. Debbie Reynolds does not discuss a surcharge in the context of a sale of property and a settlement. They paid for something. They paid for something, an in-ray resource technology, 365BR435, outside of the Ninth Circuit, condemns this action. It's obviously not Ninth Circuit law. Debbie Reynolds' case is Ninth Circuit law. And the bankruptcy court had some deep concerns dovetailing on what we just heard. Okay. Counsel, so what is it you want to – I asked this question before. I don't think I got really a square answer from you. What is it that you want to have happen here? Reversal of the order dismissing the district court appeal based upon the finding that there was a lack of standing or that there was an imbalance. Okay. And then that would do what? You go back before the district court? Back before the district court to proceed with a determination of whether Debbie Reynolds governed the case. And to the extent Debbie Reynolds does govern the case, we would, again, ask the Ninth Circuit to determine. And ultimately, what you're asking for, what you would go back and ask the accounting firm and the law firm to give back the money. That's right. And they're all named respondents in the appeals. Okay. And they took that money a year ago. You didn't seek a stay of that. No. We appealed that order in a separate appeal that is also pending that is also now a Ninth Circuit appeal as well. Right. But you didn't seek a stay pending appeal. We did not seek a stay pending appeal. Instead, we named them as respondents. And I think your Honor should. That money comes from Green Lake, right? We're all talking about the same money being held by the trustee. I think it would be helpful to lower courts to clarify that outside Chapter 11 plans. It's not held by the trustee, though. I thought it was paid to these. Oh, it's paid by this entity that bought the property, that sold it to itself, basically. And that money was transferred long ago to the trustee and the trustee. But that's pursuant to this $350,000 provision. Yes, Your Honor. Now you would be undoing that, right? Yes. So presumably if you're taking it away from the people it went to, you're taking it from the trustee and giving it back to Green Lake then, right? No. No, we're taking it from the people it went to and giving it back to the trustee to distribute as property of the estate. Oh, you're taking it from him as a recipient of it to give to these people and instead giving it to... It would never go back to Green Lake. It would come back to the trustee as property of the estate to be distributed in accordance with 507 of the Bankruptcy Code. And would the district court have the power to issue orders to the accounting firm and to the law firm as well as the trustee, or does it just go to the trustee and just say, okay, you've got to give back the $350,000. The trustee says, I've cut checks on that a long time ago that cleared. And the district court says, not our problem, or the district court can actually go to the accounting firm and say, you've got to give back this money that you got a year ago and spent. The district court can go back to the accounting firm because we've named them all as respondents in the appeal. They're all being represented by the same attorney that's here before you today. They're all aware of the appeal. They're respondents, appellees. But it was Green Lake's money, right? Green Lake's money. Green Lake's money that they agreed in the settlement to give to, to have the trustee give to certain parties. And they stated on the records they don't care where the money goes, but they want to get the property and here's your money. They don't care who it goes to. But outside the Chapter 11 context, I believe the Equitable Mootness, Chapter 11 plan confirmation context, the Equitable Mootness diagram has limited applicability as noted in our brief. And I think that would be very helpful in this case, particularly the duty to seek a stay. If the district court ordered the trustee to come up with the $350,000, then it would go back into the estate, and then does it go back to the bankruptcy court? No, it stays with the trustee. The trustee would file a final report and account. Dispersing the $350,000 in accordance with what? Under 507 of the bankruptcy code. Can he pay himself? Can he pay his own administrative expenses? Yes, it's pro rata. So let's say he's incurred a half million and Reed and Hellyer has $100,000 and Walter Wilhelm Bauer has $400,000. Then it would be 40% would go to Walter Wilhelm Bauer, 50% to the trustee, 10% to Reed and Hellyer. So it would be pro rata distribution based on, in what's called an administratively insolvent estate. And because the case was administratively insolvent, there would be no reason for Holly Estes on behalf of Walter Wilhelm Bauer to be saying anything at the hearing because, as noted in Pellant's opening brief, the debtor has no standing in a case that is not a surplus. There was no reason for the debtor to be saying anything at that hearing. The trustee, who's very aware of standing issues, would have easily informed the court, why is the debtor's counsel saying anything? We don't have enough money to pay admins, let alone we're paying pennies on the dollar to insecurities. There was only one reason for Walter Wilhelm Bauer to be saying anything at that hearing. And, in fact, they said things about this settlement and said they didn't like it for the $350,000 carve-out to the trustee's professionals. There was only one reason to be there, and that was to object to that settlement. On that basis, Walter Wilhelm Bauer has standing to appeal. We ask that the Ninth Circuit reverse the District Court opinion dismissing this case so that it can proceed on the merits in line with the Bankruptcy Court's opinions suggesting that the Ninth Circuit should, in fact, revisit the underlying substantive issue in this case. Thank you. Thank you, counsel, for the argument on a complicated case. The final case on the oral argument calendar is United States v. Lynch.
judges: Rogers, Bybee, Watford